An unpublished opinion of the North Carolina Court of Appeals does not constitute controlling legal authority. Citation is disfavored, but may be permitted in accordance with the provisions of Rule 30(e)(3) of the North Carolina Rules of Appellate Procedure.

IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA25-341

Filed 3 December 2025

Forsyth County, No. 23JT000155-330

IN THE MATTER OF: A.M.B.

Appeal by Respondent-Father from order entered 31 December 2024 by Judge Thomas W. Davis, V in Forsyth County District Court. Heard in the Court of Appeals 6 November 2025.

> *Camino Law, by Rebecca Perry, for Petitioners-Appellees.*
>
> *Hooks Law, P.C., by Laura G. Hooks, for Respondent-Appellant Father.*
>
> *No brief filed for guardian ad litem.*

PER CURIAM.

Respondent-Father appeals the trial court's order terminating his parental rights to his minor child, Alana.[1] On appeal, Respondent-Father argues that the trial court erred in terminating his parental rights on the grounds of failure to legitimate and willful abandonment because it failed to make necessary findings of fact to

---

[1] A pseudonym has been used to protect the identity of the minor child. *See* N.C. R. App. P. 42(b).

support those grounds. He also contends the trial court abused its discretion in concluding that termination of his parental rights was in Alana's best interest. After careful review, we affirm.

## I. Factual Background and Procedural History

This case arises from a private termination action filed by Petitioners, Alana's maternal great-grandparents. Alana was born in May 2015. Alana's mother ("Mother"), who has a long history of drug and alcohol use, lived with Petitioners during her pregnancy and the first year of Alana's life. Mother is not a party to the current proceeding. Alana lived with petitioners on-and-off her for most of her life, and began residing with them continuously in December 2021. Respondent-Father and Mother were never married, and Respondent-Father is not listed on Alana's birth certificate as her father.

Respondent-Father saw Alana a few times in the first four years of her life. Respondent-Father was then incarcerated for a term of 70 to 90 months for drug trafficking.[2]

On 14 April 2022, Petitioners were awarded emergency custody of Alana until a temporary custody order was entered on 26 July 2022, wherein Petitioners were granted full legal and physical custody of Alana. On 13 March 2023, the court entered an order granting Petitioners permanent sole legal and physical custody of Alana due

---

[2] No evidence was presented regarding Respondent-Father's exact dates of incarceration.

to Mother's drug usage, unemployment, unstable housing, domestic violence, and driving "under the influence of drugs and alcohol while [Alana] was in the car." The trial court also ordered that neither Mother nor Respondent-Father were to have visitation. At the time of the custody action, Respondent-Father remained incarcerated.

On 31 June 2023, Petitioners filed a petition to terminate Respondent-Father's parental rights based on the grounds of failure to legitimate and willful abandonment. *See* N.C.G.S. § 7B-1111(a)(5) and (7). Petitioners did not file a petition to terminate Mother's parental rights.

The matter came on for hearing on 19 September 2024. In an order entered 31 December 2024, the trial court found and concluded that grounds existed to terminate Respondent-Father's parental rights as alleged in the petition and that termination of his parental rights was in Alana's best interests. Respondent-Father filed timely notice of appeal.

## II. Jurisdiction

This Court has jurisdiction to review "[a]ny order that terminates parental rights or denies a petition or motion to terminate parental rights." N.C.G.S. § 7B-1001(a)(7) (2023).

## III. Standard of Review

A termination of parental rights proceeding consists of two parts: the adjudicatory stage and the dispositional stage. At the adjudicatory stage, the

petitioner bears the burden of proving "the facts justifying the termination by clear and convincing evidence." N.C.G.S. § 7B-1111(b) (2025). If a trial court's finding of fact is supported by such evidence, "it will be deemed conclusive even if the record contains evidence that would support a contrary finding." *In re S.R.*, 384 N.C. 516, 520 (2023) (cleaned up). "Unchallenged findings are deemed to be supported by the evidence and are binding on appeal." *In re M.S.E.*, 378 N.C. 40, 47 (2021). "A trial court's finding of an ultimate fact is conclusive on appeal if the evidentiary facts reasonably support the trial court's ultimate findings of fact." *In re G.C.*, 384 N.C. 62, 65 (2023) (cleaned up). We review the trial court's conclusions of law de novo. *In re A.A.*, 381 N.C. 325, 334 (2022).

At the dispositional stage, the trial court determines whether termination of parental rights is in the best interests of the child. *In re C.B.*, 375 N.C. 556, 560 (2020). "The trial court's assessment of a juvenile's best interests at the dispositional stage is reviewed solely for abuse of discretion." *In re A.U.D.*, 373 N.C. 3, 6 (2019). "We review the trial court's dispositional findings of fact to determine whether they are supported by competent evidence." *In re J.J.B.*, 374 N.C. 787, 793 (2020).

## IV.    Analysis

### A. Grounds for Termination

On appeal, Respondent-Father challenges the trial court's adjudication of grounds for termination of his parental rights under subsections 7B-1111(a)(5) and (7).

Under subsection 7B-1111(a)(5):

The trial court may terminate parental rights upon a finding [that]:

> The father of a juvenile born out of wedlock has not, prior to the filing of a petition or motion to terminate parental rights, done any of the following:
>
> a. Filed an affidavit of paternity in a central registry maintained by the Department of Health and Human Services. . . .
>
> b. Legitimated the juvenile pursuant to provisions of G.S. 49-10, G.S. 49-12.1, or filed a petition for this specific purpose.
>
> c. Legitimated the juvenile by marriage to the mother of the juvenile.
>
> d. Provided substantial financial support or consistent care with respect to the juvenile and the mother.
>
> e. Established paternity through G.S. 49-14, 110-132, 130A-101, 130A-118, or other judicial proceeding.

N.C.G.S. § 7B-1111(a)(5) (2023).  When basing the termination of parental rights on this ground, "the court must make *specific findings of fact* as to each subsection." *In re J.M.K.*, 261 N.C. App. 163, 167 (2018) (brackets omitted).

Respondent-Father argues the trial court's order is devoid of any finding specifically addressing subsection (e).  We disagree.

While the court's findings do not specifically track the language of the statute, the findings sufficiently address subsection (e) and whether Respondent-Father failed to establish paternity through sections 49-14, 110-132 (affidavit of parentage),

130A-101 (appearing on birth certificate), and 130A-118 (amendment of the birth certificate).

The court found that Respondent-Father's name does not appear on Alana's birth certificate, thereby showing he did not establish paternity through sections 130A-101 and -118 of our General Statutes. The court also found that the first pleading Respondent-Father "has filed in any legal action regarding custody of [Alana]" was his answer to the termination petition filed by his attorney on his behalf; that Respondent-Father has not taken any practical or legal steps to be a part of Alana's life or obtain custody of her, and that Respondent-Father has never legitimated Alana by marrying Mother or "pursuant to any other legal mechanism." Finally, the court found that Respondent-Father did not file an affidavit of parentage with the Department of Health and Human Services. These findings demonstrate that Respondent-Father did not establish paternity through filing a civil action under section 49-14 and did not file an affidavit of parentage pursuant to section 110-132.

Based on the foregoing, we conclude the trial court's findings adequately address each subsection under subsection 7B-1111(a)(5) and are sufficient to support termination of Respondent-Father's parental rights based on his failure to legitimate.

Because we conclude the trial court did not err in finding at least one ground existed to terminate Respondent-Father's parental rights, we need not address his arguments regarding subsection 7B-1111(a)(7). *See In re A.R.A.*, 373 N.C. 190, 194 (2019) ("[A] finding of only one ground is necessary to support a termination of

parental rights . . . .").

## B. Best Interests

Respondent-Father also argues the trial court abused its discretion in concluding that terminating his parental rights was in Alana's best interests. Specifically, Respondent-Father challenges finding of fact 3 as "inaccurate," and argues that subsections 7B-1110(2) and (3) required "the court to consider adoption and a permanent plan," but there was no permanent plan and "no likelihood of adoption of Alana as no one is seeking to adopt her[,] [and] Petitioners are not wishing to be considered for adoption of Alana." Respondent-Father also contends that the trial court erred because there was no evidence that the relationship between Alana and Respondent-Father was "truly unsafe," and terminating his rights would preclude any relationship with Alana.

"After an adjudication that one or more grounds for terminating a parent's rights exist, the court shall determine whether terminating the parent's rights is in the juvenile's best interest." N.C.G.S. § 7B-1110(a) (2023). In considering the best interests of the minor child:

> [T]he court shall consider the following criteria and make written findings regarding the following that are relevant:
>
> (1) The age of the juvenile.
>
> (2) The likelihood of adoption of the juvenile.
>
> (3) Whether the termination of parental rights will aid in the accomplishment of the permanent plan for the

juvenile.

(4) The bond between the juvenile and the parent.

(5) The quality of the relationship between the juvenile and the proposed adoptive parent, guardian, custodian, or other permanent placement.

(6) Any relevant consideration.

*Id.*

Here, the trial court made the following factual findings to support its determination that termination of Respondent-Father's parental rights was in Alana's best interests:

> 1. [Alana] knows who [Respondent-Father] is because she has been told who he is, and she has seen a photograph of him. [Respondent-Father] has had no contact with [Alana] in approximately five years. [Alana] refers to [Respondent-Father] as "my dad" or "[his first name]." They have no bond, nor does [Alana] bear [Respondent-Father] any ill will or get upset talking about him.
>
> 2. In the last several months, [Alana] has said she is not ready to meet [Respondent-Father] but may want to meet him when she is older.
>
> 3. [Alana]'s guardian ad litem, Mr. Jones, testified that terminating [Respondent-Father]'s parental rights is in [Alana]'s best interest.
>
> 4. Mr. Jones was concerned that [Petitioners] were not pursuing termination of [Mother's] parental rights too. He also had some concern about [Petitioners'] respective ages, however, he noted that they are mindful of that issue, they have sufficient income to support themselves and [Alana], they have life insurance policies for which [Alana] is the beneficiary, and they have a plan for either of their adult

children to take care of [Alana] should they predecease [Alana] reaching the age of majority.

5. [Alana] calls [Petitioner great-grandfather] "poppy" or "grampy" and [Petitioner great-grandmother] "grammy."

6. [Alana] has a parent/child relationship with [Petitioners]. She looks to them for comfort and guidance. They have protected her and ensured that all her basic needs have been met since she was born.

7. [Petitioners] have enrolled [Alana] at [a Montessori school], a private school for which [Petitioners] pay out of pocket, where she is in the fourth grade.

8. [Alana] is nine years old at the time of the hearing.

9. Because [Petitioners] are not seeking termination of [Mother]'s parental rights at this time, they will not proceed with adoption should [Respondent-Father]'s parental rights be terminated.

10. [Petitioners] currently exercise sole legal and physical custody of [Alana].

11. Because this Petition is not being brought pursuant to an abuse, neglect, or dependency action, there is no permanent plan for [Alana].

Respondent-Father challenges finding of fact 3 by asserting that the guardian ad litem ("GAL") did not testify as to his recommendation about whether termination was in Alana's best interests, but instead responded by discussing his interview "with Petitioners about their financial situation and Alana showing him around the house and telling him about her life." However, Respondent-Father also acknowledges that "[t]he GAL testified that his recommendation was that the petition be granted, but

that he had concerns about the age of Petitioners and that they were not seeking to terminate Mother's parental rights." By testifying that his recommendation in this case would be for the petition to be granted, in effect, the GAL agreed that termination of Respondent-Father's parental rights was in Alana's best interests.[3] Therefore, finding of fact 3 is accurate.

But even if finding of fact 3 were erroneous, the trial court's findings demonstrate that it considered each factor under section 7B-1110(a) before concluding that termination was in Alana's best interests. The court found: Alana was nine years old at the time of the hearing; there was no bond between Alana and Respondent-Father; Alana has a parent/child relationship with Petitioners and "looks to them for comfort and guidance[;]" there was no permanent plan because this was a private termination action; and Petitioners are not seeking to terminate Mother's parental rights at this time so "they will not proceed with adoption should [Respondent-Father's] parental rights be terminated." The findings also demonstrate that the court considered the GAL's concerns regarding Petitioners' ages and the fact that they were not also pursuing termination of Mother's parental rights in making its decision.

Although the court found that Petitioners would not pursue adoption if

---

[3] Though not testimony, the GAL report filed shortly before the hearing confirms that the GAL's opinion was "that terminating the parental rights of [Respondent-Father] is in [Alana's] best interest."

Respondent-Father's parental rights were terminated, this single factor is one of many that a trial court considers, and it "becomes more relevant in a [termination of parental rights] case in which a child is in the custody of a Department of Social Services agency and termination of the parent's rights leaves the child as a ward of the State." *In re C.J.C.*, 374 N.C. 42, 49 (2020). This is a private termination action initiated by the child's maternal great-grandparents who have full legal and physical custody of the child. Therefore, the likelihood of Alana's adoption in this case "is not a sufficiently relevant factor . . . in determining whether termination of [Respondent-Father's] parental rights was in [Alana's] best interests." *Id.*

Respondent-Father "essentially ask this Court to do something it lacks the authority to do—to reweigh the evidence and reach a different conclusion than the trial court." *In re A.J.T.*, 374 N.C. 504, 514 (2020). Based on the trial court's findings, which demonstrate that it considered each of the required factors, we are satisfied that the trial court's conclusion that termination of Respondent-Father's parental rights was in Alana's best interests was neither arbitrary nor manifestly unsupported by reason as to constitute an abuse of discretion.

## V. Conclusion

The trial court did not err in determining that grounds existed to terminate Respondent-Father's parental rights pursuant to N.C.G.S. § 7B-1111(a)(5), nor did it err in concluding that termination of Respondent-Father's parental rights was in Alana's best interests. Accordingly, we affirm the trial court's order terminating

Respondent-Father's parental rights to Alana.

AFFIRMED.

Panel consisting of Judges ZACHARY, GORE, and FREEMAN.

Report per Rule 30(e).